FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ AUG 30 2011 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DE PING SONG, YANG XU, BAI SONG LI
CHUN SEN ZHU, YAN ZHANG and JIE LI,

                    Plaintiffs,

    -against-

47 OLD COUNTRY, INC. (d/b/a/ BABI I),
JILLY SN, INC. (d/b/a BABI I), BABI NAIL
USA II CORP. (d/b/a/ BABI III), KUI SOON
CHO (a/k/a ROSEMARY), HAE SOOK KIM,
IN BAE KIM (a/k/a/ FRANK, a/k/a/ INBAE
KIM, a/k/a/ IN B. KIM a/k/a/ BAE KIM, a/k/a
BAE I. KIM), and HYE YOUNG CHOI (a/k/a
JACKY, a/k/a/ HAEYOUNG CHOI, a/k/a/
HAE YOUNG CHOI),
                    Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 09-5566

(Wexler, J.)

APPEARANCES:

        AARON MICHAEL HALEUGA, ESQ.
        The Legal Aid Society
        Attorneys for Plaintiffs
        199 Water Street, 3rd Floor
        New York, New York 10038

        ZABELL & ASSOCIATES, P.C.
        BY: SAUL D. ZABELL, ESQ.,
        Attorneys for Defendants
        4875 Sunrise Highway Suite 300
        Bohemia, New York 11716

WEXLER, District Judge:

      This is a case that alleging violations of federal and state wage, hour, and employment discrimination laws, including retaliation. Plaintiffs are six Chinese individuals who were employed at nail salons doing business under the name "Babi," at various times between August

1

2004 and the present. These salons have been identified as "Babi I," located at 47 Old Country Road in Westbury, New York, "Babi II," located in Glen Head, New York, and "Babi III," located in Glen Cove, New York. Named as Defendants with corporate ownership interests in Babi I are 47 Old Country Road and Jilly SN, Inc.. Individual Defendants who are alleged to be owners of the Babi salons are Kui Soon Cho (referred to by the parties and herein as "Rosemary") and Bae Kim (referred to by the parties and herein as "Frank"). Rosemary and Frank are married, and worked at the salons where Plaintiffs were employed. Also named as individual Defendants are Hae Sook Kim and Hye Young Choi. This latter-named Defendant is referred to by the parties as "Jacky."

Early in this action, Plaintiffs informed the court of their belief that Defendants were engaged in fraudulent asset transfers aimed at frustrating a possible judgment. Shortly thereafter, this court entered orders requiring that Defendants place $250,000 in their attorneys' escrow account, and giving Plaintiff notice of certain transfers of assets. These orders were issued on consent of the parties. Most recently, this court granted a temporary restraining order (the "TRO") with respect to the possible sale of one of Defendants' businesses. The court's orders restraining Defendants' assets were issued on consent, or pursuant to Section 6201 of the New York CPLR, as authorized by Rule 64 of the Federal Rules of Civil Procedure.

The parties are no longer in agreement as to the placement of any assets in escrow, or any other restraint on Defendants' assets. The court has held a hearing, and rules below on Defendants' motion to vacate the TRO and to vacate the order of attachment.

## DISCUSSION

I.  Legal Principles

Rule 64 of the Federal Rules of Civil Procedure provides that the remedy of attachment is governed by state law. See Fed. R. Civ. P. 64. Section 62 of the New York Civil Practice Law and Rules ("CPLR") therefore governs Plaintiff's motion to restrain Defendants' assets. The relief of attachment is available, inter alia, where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts . . ." NY CPLR 6201(3).

Under New York law, a plaintiff may obtain an order of attachment if it is demonstrated that:

(1) plaintiff has stated a claim for a money judgment;

(2) plaintiff has a probability of success on the merits;

(3) defendant, "with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered, or secreted property, or removed it from the state or is about to do any of these acts," and,

(4) the amount demanded from the defendant is greater than the amount of all counterclaims known to plaintiff.

N.Y. C.P.L.R. § 6201(3).

There is no issue presented here as to the first and fourth elements above.

As to the element of probability of success, a party seeing an order of attachment must demonstrate that it is more likely than not that it will succeed on the merits. This requires the making of an evidentiary showing that is greater than that required to show a prima facie case.

DLJ Mortgage Capital, Inc. v. Kontogiannis, 594 F. Supp.2d 308, 319 (E.D.N.Y. 2009). With respect to the third element, Plaintiff must show that the party against whom an attachment is sought has, or is about to engage in one of the acts set forth in the statute with respect to the disposal of assets, and that such acts were undertaken with fraudulent intent or to frustrate the enforcement of a judgment. Id.

Plaintiffs' entitlement to an order of attachment is dependent on their ability to show that Defendants have, or are about to engage in, one of the acts set forth above with respect to the disposal of assets. Additionally, Plaintiffs must show that such acts were undertaken with fraudulent intent or to frustrate the enforcement of a judgment. Even a strong showing as to success on the merits is not enough to show fraudulent intent. DLJ Mortgage, 549 F. Supp.2d at 320-21. Additionally, The mere movement of property is insufficient to support an order of attachment. Id. at 319. Instead, Plaintiffs must show facts indicating fraud. To determine whether a defendant acted with fraudulent intent, the court considers whether transfers at issue exhibit "badges of fraud." DLJ Mortgage, 594 F. Supp.2d at 320. Such "badges," include:

(1) gross inadequacy of consideration;

(2) a close relationship between transferor and transferee;

(3) the transferor's insolvency as a result of the conveyance;

(4) a questionable transfer not in the ordinary course of business;

(5) secrecy in the transfer; and

(6) retention of control of the property by the transferor after the conveyance.

Id. (citations omitted).

The court recognizes that attachment is an extraordinary and harsh remedy, and that it is

4

therefore necessary that the statutory factors be "strictly construed in favor of those against whom" attachment is sought. Li Rong Gao v. Perfect Team Corp., 2011 WL 3625131 *2 (E.D.N.Y. 2011); see DLJ Mortg., 594 F. Supp.2d at 319 (citations omitted); Brastex Corp. v. Allen Int'l, Inc., 702 F.2d 326, 332 (2d Cir.1983) (noting the "stringent" nature of the requirements of Section 6201(3). Accordingly, mere satisfaction of the statutory criteria does not guarantee that the motion will be granted. Instead, "relief is discretionary and since attachment is a harsh remedy, the court must exercise care in its application." Musket Corp. v. PDVSA Petroleo S.A., 512 F. Supp.2d 155, 160 (S.D.N.Y. 2007) (citation omitted). With these standards in mind the court turns to consider Plaintiffs' request.

## II. Disposition of the Attachment Motion

Plaintiff seeks to attach the assets of all Defendants – those of the corporate entities named, as well as those of all Individual Defendants. When Plaintiffs commenced this action, they sought to restrain $445,000 in assets. This amount was meant to cover a potential recovery on Plaintiff's wage and hour claims, as well as an award of attorney's fees to Plaintiffs as prevailing parties. Plaintiffs now seek to attach over $600,000 in assets. This amount is meant to include additional attorneys fees expended since the commencement of this 2009 litigation.

The court held a hearing to assist in its determination as to whether Plaintiffs have made a sufficient showing of the second and fourth elements, i.e. probability of success, and fraudulent intent. Plaintiffs must make an appropriate showing of both to be entitled to a pre-judgment attachment of Defendants' assets. The court has before it the transcripts of the attachment hearing, evidence submitted in connection with that hearing, and affidavits and records filed in advance of the hearing. While the court did not hold an entire trial on the merits, the court heard

5

extensive testimony and received evidence.

A. Likelihood of Success

As to likelihood of success, the court holds that Plaintiffs have more than satisfied their burden of showing entitlement to an attachment. In addition to the pre-hearing affidavits, the court heard the direct testimony, and full cross-examination of Plaintiff Bae Song Lie ("Plaintiff"). Plaintiff testified credibly regarding his wage and hour claims.[1] He more than established the likelihood of success on his claim that he regularly worked in excess of 40 hours per week, with neither regularly scheduled breaks, nor the payment of overtime. Plaintiff showed that his daily wage did not likely amount to lawful minimum wage. He also established the likelihood of succeeding on claims that wage and hour statements were completed after the fact, and pursuant to the direction of his employers. Defendant attempted to impeach Plaintiff's credibility, and while there may be a different outcome at trial, this court finds that Plaintiff was highly credible, even in the face of aggressive cross-examination. Having held that Plaintiffs have satisfied their burden of showing a likelihood of success on the merits, the court turns to consider whether there have also shown the required fraudulent intent. The court's conclusion with respect to these factors is determined mainly by its assessment of the testimony of Defendants as well as documentary evidence, described below.

B. Fraudulent Intent

1. The Evidence

Plaintiff introduced deposition and live testimony as well as bank records and other

---

[1] In recognition of the preliminary nature of the hearing and its purpose, counsel and the court limited Plaintiff's merits testimony to his wage and hour claims, and did not hear all testimony on the claims of racial discrimination.

6

documentary evidence. The evidence introduced spoke to ownership of the Babi salons, the possible sale of one of the salons, as well as the possible sale of Frank as Rosemary's personal residence. The court also considered bank records of accounts held by Frank and Rosemary.

As to ownership of the Babi salons, Plaintiffs introduced the deposition testimony of Defendant Hae Sook Kim ("Kim") and that of Frank. Frank also testified live at the hearing, as did Rosemary. Kim, who is Rosemary's sister-in-law, testified that Rosemary is the owner of the Babi salons. Despite Rosemary's ownership of Babi I and Babi II, it was established that Defendant Kim was a shareholder in 47 Old Country Road and had the ability to write checks for the salon. The checks signed by Kim were blank checks that were later completed by Rosemary. Kim stated that she exercised this authority because Rosemary, a family member, asked that she do so. Kim testified that she had not signed a check for a Babi salon in the year prior to her deposition.

Rosemary addressed the issue of Kim's involvement at Babi I. Specifically, she stated that Kim's name was put on the corporate documents for Babi I at the request of Rosemary's mother-in-law, who made a substantial initial investment of $100,000 in that salon. Rosemary presumed that the request was made to financially assist Kim. Rosemary stated that she took over the full operation of Babi I sometime in 2006. She testified that after the commencement of this action she attempted to change the corporate ownership of 47 Old Country Road to remove Kim's name, but was advised by counsel not to make any corporate change at that time.

Frank's testimony also addressed ownership issues. At his deposition, portions of which were read at the hearing, Frank testified that both he and Rosemary were the owners of Babi II, located in Glen Head, New York. He testified that his mother invested most of the money to

open the Babi III salon, located in Glen Cove, New York. Frank was also called as a live witness to testify at the hearing. There, he testified that he helped in the construction and repair of the Babi I salon, but was not the owner. Consistent with his deposition testimony, Frank testified that he was the owner of the Babi II salon located in Glen Head.

Plaintiffs also developed evidence regard the possible sale of the Babi I salon and Frank and Rosemary's home. When questioned about a possible sale of Babi I, Rosemary stated that she wanted to sell the salon because it was too hard for her to handle. The person who Rosemary identified as in negotiation to purchase Babi I was identified as a Mr. Park, the same person who, prior to the commencement of this lawsuit, purchased the Babi III salon. Rosemary testified that she has no personal or familial relationship with Mr. Park.

As to the possible sale of Frank and Rosemary's personal residence, Rosemary testified that a broker was engaged in January of 2010 to handle a possible sale. Other evidence also indicated that the house was for sale. There was no evidence that there was an impending sale to a personal acquaintance or a family member at a below market value price. As of the date of the hearing, the home was not sold.

Plaintiff's counsel introduced bank records during the hearing. Each of these records showed a steady depletion of assets in personal bank accounts held jointly by Frank and Rosemary. One such record, dated June 17, 2008 (prior to the commencement of this action), referred to both Babi I and Babi II, and tended to show that Frank and Rosemary were less than fastidious in keeping the banking activities of their three Babi salons separate. Plaintiff also introduced monthly bank statements produced by Defendants, covering a period of time two months prior to commencement of this lawsuit, through the end of 2010. Plaintiffs asked Frank

about a Wachovia bank account held jointly with Rosemary. It was established that the balance in that account was $90,482 on January 7, 2010, and that a check for $20,000 was drawn on that account on January 26, 2010. On February 3, 2010, an additional $30,000 was removed from that account. The account was closed later in the same month. A second Wachovia account jointly held by Frank and Rosemary contained $31,282.34 as of January 6, 2010. As of December 2010, that account contained $3,820.54. Frank also testified about an account held jointly with Rosemary at Shin Han Bank. As of December 15, 2009, approximately one week prior to the commencement of this action, that account had a balance of over $25,000. As of November 2010 that account contained approximately $82.00. A fourth jointly held bank account was established to have a balance in excess of $200,000 in October 2009. As to that account, Frank testified that the amount held there was expended mostly for attorneys' fees in this action.

Rosemary testified as to bank accounts that she holds. Those accounts are at the Woori American Bank, Shin Han Bank and Wachovia. The latter two accounts were identified as the joint accounts with Frank as discussed above. As to the account at Woori American Bank, Rosemary testified as to a current balance of between $2,000 and $5,000.

As part of Defendants' case, a 47 Old Country Road employee, known as "Sammi," was called. Sammi testified that she worked at 47 Old Country Road at the time this lawsuit was commenced. She stated that she never heard Frank say either that he was going to close the salon or declare bankruptcy as a result of this action. Sammi also testified that no equipment was moved out of the salon and that there were enough supplies on hand there to keep the salon open. The court finds that there was no credible evidence that Defendants had filed or were contemplating filing for bankruptcy.

9

3. <u>Disposition As To Fraudulent Intent</u>

The court's assessment of the evidence at the hearing leads it to conclude that Plaintiffs have not sustained their stringent burden of showing the fraudulent intent necessary to support an order of attachment.

The strongest evidence offered in support of Plaintiffs' claim of fraudulent intent came in the form of the bank records. These records showed a slow and steady depletion of assets. While such diminution of assets may support the assertion that Frank and Rosemary are emptying their accounts to avoid paying a judgment in this case, such depletion may also reflect a downturn in the economy, as well as the need to pay counsel. Mindful the fact that the movement of property, standing alone, is insufficient to support an order of attachment, see <u>DLJ Mtge.</u>, 594 F. Supp.2d at 319, the court concludes that such movement does not satisfy Plaintiffs' burden of showing the indicia of fraud necessary to support an order of attachment. As set forth below, the additional evidence adduced at the attachment hearing does not sway the court to hold otherwise.

Plaintiffs' evidence with respect to the ownership of the salon was insufficient to support attachment. The evidence showed that Kim was allowed to sign checks, and funds were intermingled among the three Babi salons prior to the institution of this lawsuit. This evidence did show that Defendants were poor record keepers. It also showed that they engaged in the ill-advised practice of having a family member sign checks who, despite being a shareholder, was not involved in the day to day operation of the Babi salon. It was not sufficient, however, to show fraudulent intent to dispose of assets after institution of the lawsuit. This is especially true since Kim exercised check writing authority even before the commencement of this action.

10

Finally, as to Plaintiffs' reliance on the possible sale of Babi I, and Frank and Rosemary's house, the former was not shown to be anything less than an ongoing arm's length negotiation, and the latter has not occurred. Neither of these transactions exhibit the required "badges" of fraud. DLJ Mortgage, 594 F. Supp.2d at 320. As to the sale of Babi I, the possible sale is not contemplated to a person in any way related to Frank and Rosemary, and there is no showing that insolvency will follow the sale. Defendants filed the proposed contract of sale under seal. This court has reviewed that contract in camera, and finds that the proposed amount of the sale is reasonable, and the terms of the sale do not support a claim of a fraudulent transaction.[2] While Frank and Rosemary's personal residence was listed at an asking price below what was initially paid, that listing price remains over $1 million. The discrepancy between the listed amount and the amount paid to purchase the home, is easily ascribed to a drop in home market values since its 2007 purchase. In any event, despite the placing of the house on the market it remains unsold.

In sum, the court's consideration of the evidence adduced at the attachment hearing leads the court to conclude that the TRO and all orders of attachment entered in this matter should vacated.

## CONCLUSION

For the foregoing reasons, Defendants' motion appearing at docket number 92, to vacate the temporary restraining order and to terminate the preliminary injunction and order of attachment is granted. The motion to allow the use of escrow funds appearing at docket 90 is denied as moot. The Clerk of the Court is directed to terminate the motions appearing under

---

[2] The court hereby grants Defendants' application, appearing under Docket number 125, to file the document discussed above under seal.

11

Docket numbers 90, 92 and 125.

SO ORDERED.

                                                    LEONARD D. WEXLER
                                                    UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       August 30, 2011