Case 2:09-cv-05566-LDW-GRB Document 287 Filed 10/03/13 Page 1 of 17 PageID #: 3904

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y
★ OCT 03 2013 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DE PING SONG, YANG XU, BAI SONG LI
CHUN SEN ZHU, YAN ZHANG and JIE LI,

                Plaintiffs,

   -against-

47 OLD COUNTRY, INC. (d/b/a/ BABI I),
JILLY SN, INC. (d/b/a BABI I), BABI NAIL
USA II CORP. (d/b/a/ BABI III), KUI SOON
CHO (a/k/a ROSEMARY), HAE SOOK KIM,
IN BAE KIM (a/k/a/ FRANK, a/k/a/ INBAE
KIM, a/k/a/ IN BAE KIM, a/k/a IN B. KIM
BAE I. KIM), and HYE YOUNG CHOI (a/k/a
JACKY, a/k/a/ HAEYOUNG CHOI, a/k/a/
HAE YOUNG CHOI),

                Defendants,

   -and-

INHAE CORP. and MYUNG RYUN PARK,

                Transferees.
------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 09-5566

(Wexler, J.)

APPEARANCES:

    KAREN CACACE, ESQ.
    The Legal Aid Society
    Attorneys for Plaintiffs
    199 Water Street, 3rd Floor
    New York, New York 10038

    THOMAS J. KALISH, ESQ.
    211 S. Wellwood Avenue, Suite E
    Lindenhurst, New York 11757
    Attorneys for Transferees Inhae Corp. and Myung Ryun Park

WEXLER, District Judge:

This case was commenced in 2009 by Plaintiff salon workers alleging violations of federal and state wage, hour, and employment discrimination laws. The case proceeded to trial and in March of 2012, Plaintiffs obtained a jury verdict on certain of their claims. A judgment including liquidated damages was ultimately entered in the amount of $474,011.43. Despite Plaintiffs' attempts to collect on the Judgment, Defendants have paid nothing to Plaintiffs.

Presently before the court is Plaintiffs' motion on a proceeding under Rule 69 of the Federal Rules of Civil Procedure, with respect to third-parties Inhae Corp. ("Inhae") and Myung Ryun Park ("Park"), denominated and collectively referred to herein as "Transferees."[1] Plaintiffs seek a judgment of successor liability with respect to both Inhae and Park. For the reasons that follow the motion is granted in part as set forth below.

## BACKGROUND

I. The Parties, the Trial and the Judgment

Plaintiffs were employed at nail salons doing business under the name "Babi," at various times beginning in August 2004. The salons were known as "Babi I," located at 47 Old Country Road in Westbury, New York, "Babi II," located at 338 Glen Head Road in Glen Head, New York, and "Babi III," located in Glen Cove, New York. Defendants had corporate and individual ownership interests in the Babi salons. The individual Defendants who were alleged to be owners

---

[1] Transfers to third parties Hyun Sub, Inc. ("Sub, Inc.") and Won Chel Jung ("Jung"), are the subject of a separate motion and related proceedings that are presently before Magistrate Judge Brown. Briefly stated, the parties are engaged in proceedings valuing a business with an eye toward transferring that business to Plaintiffs. The court will make no findings with respect to successor liability of Sub, Inc. and/or Jung pending the outcome of those separate proceedings.

2

of the Babi salons are Kui Soon Cho (referred to by the parties and herein as "Rosemary") and Bae Kim (referred to by the parties and herein as "Frank"), a married couple who owned and worked at the salons where Plaintiffs were employed. Also named as individual Defendants were Hae Sook Kim and Hye Young Choi ("Choi").

As noted, trial in this matter took place and was completed in March of 2012. The jury found in favor of Plaintiffs in the following amounts:

| Plaintiff Song: | $49,564.00; |
| --- | --- |
| Plaintiff Song Li: | $39,741.00; |
| Plaintiff Yan Zhang: | $70,544.00; |
| Plaintiff Chun Sen Zhu: | $52,247.00; |
| Plaintiff Yang Xu: | $16,597.00; |
| Plaintiff Jie Yi: | $14,067.00. |

On June 26, 2012, after certain post-trial proceedings, judgment was entered in the amount noted above – $474,011.43 (the "Judgment"). The Judgment includes the damages referred to above as well as certain federal and state statutory liquidated damages, along with applicable pre-judgment interest. All Defendants are jointly and severally liable as to the Judgment.

II.   Post-Trial Proceedings

After entry of the Judgment, Plaintiffs moved for an award of attorneys' fees. The court deferred decision as to attorneys' fees while the matter was pending appeal. At the same time, Plaintiffs sought post-trial discovery with respect to Defendants' assets. Those efforts were largely ignored by Defendants, certain of whom declared bankruptcy. Those bankruptcy

proceedings were later dismissed when the allegedly bankrupt Defendants failed to comply with orders of the bankruptcy court.

    A.    <u>The Sale of the Babi Salons</u>

In 2008, the salon doing business under the name "Babi III," was sold to a corporate entity known as Insan Corp. (presumably controlled by Park) for $250,000. That sale was prior to the institution of this lawsuit. While the fact of the 2008 sale is presumably offered to show market value and in the nature of background information, that sale is not the subject of the present claim of successor liability. Instead, the present motion is addressed to the July 2011 sale of the salon operated under the Babi I name.[2] The sale of that salon to Transferee Inhae was finalized in August of 2011.

The sale of the Babi I salon to Inhae was negotiated after the commencement of this lawsuit, and during the time when a pre-trial attachment motion was being litigated. That litigation followed a break down of the parties' prior agreement to place $250,000 in escrow pending the outcome of the trial. In July of 2011, while the attachment issue was being litigated, Defendants agreed to the sale of Babi I for $250,000. Because a previously agreed upon attachment order was in place, the proceeds of the sale were placed in Defense counsel's escrow account pending the outcome of the motion.

The court held a hearing on the attachment motion, and the facts surrounding the sale of Babi I were, <u>inter alia</u>, a subject of testimony at the hearing. Specifically, Defendant Rosemary testified that she wanted to sell Babi I because it was too hard for her to handle. <u>De Ping Song v.</u>

---

    [2]    The sale of the Babi II salon to transferee Won Chel Jung is similarly not the subject of the present motion.

4

47 Old Country, Inc., 2011 WL 3846929 *4 (E.D.N.Y. 2011). Rosemary identified Park as the individual to whom the salon was to be sold, and testified that she had neither a personal nor familial relationship with Park. Id. When discussing this testimony in the context of its disposition of the attachment motion, the court characterized the proposed sale as "an ongoing arm's length negotiation" that did not "exhibit the required 'badge' of fraud." Id. at *6; see DLJ Mortg. Capital, Inc. v. Kontogiannis, 594 F. Supp.2d 308, 320 (E.D.N.Y. 2009). The court noted that the sale was not to a person related to Frank and Rosemary, and there was no showing that the sellers' insolvency would follow the sale. The proposed contract of sale was filed under seal and reviewed by the court, in camera. Upon such review, the court found the proposed amount of the sale to be reasonable, and that the terms did not support a claim of a fraudulent transaction. Id.

Based in part upon the foregoing testimony, the court declined to order pre-trial attachment, and the funds held in escrow were released. Id. Denying the attachment, the court recognized that attachment "is an extraordinary and harsh remedy," and that applicable statutory factors were to be "strictly construed in favor of those against whom" attachment is sought. De Ping Song v. 47 Old Country, Inc., 2011 WL 3846929 *2 (E.D.N.Y. 2011), quoting, Li Rong Gao v. Perfect Team Corp., 2011 WL 3625131 *2 (E.D.N.Y. 2011). Thereafter, in August of 2011 – seven months before the trial herein – the sale of Babi I was consummated.

B.   The Post-Sale Operation of Babi I

Plaintiffs have submitted affidavit testimony indicating that after assuming ownership of the salon, Transferees continued to operate under the Babi I name. This is not surprising given that the contract of sale included the sale of the right to use that name. There is also evidence that

5

for at least six months after the sale, managers and employees who worked for Frank and Rosemary continued to work at the salon. Transferee Park is alleged to be intimately involved in the post-sale operation of Babi I. She is said to be responsible for all day-to day operations at the salon, including determining salaries, signing paychecks and instructing employees as to their duties.

Transferees have submitted evidence that after taking over operation of the Babi I salon, Inhae has operated the salon independently, and has inter alia, maintained its own insurance, point of sale system, and paid the rent on the premises. Transferees state further that the services offered at the salon have changed, as have the prices charged and the salon's physical space. There is no evidence as to any post-sale involvement in operation of the Babi I salon by Frank, Rosemary or any other Defendant.

  C. <u>Proceedings on this Motion</u>

In April of 2013, Plaintiffs began proceedings to collect the Judgment as against Park and Inhae. Plaintiffs sought, <u>inter alia</u>, an order: (1) providing for the attachment of any assets of lnhae; (2) directing Inhae to pay profits earned by Babi I to Plaintiffs, and (3) appointing Plaintiffs as receiver to operate Babi I. This court signed the requested temporary restraining order. The parties thereafter briefed the issue of whether Transferees should be liable for the Judgment as Defendants' successors. After outlining the applicable legal principles, the court will turn to the merits of the motion.

DISCUSSION

I. <u>Rule 69 and CPLR 5225</u>

Rule 69 of the Federal Rules of Civil Procedure provides that judgments are enforced by

writs of execution. Fed. R. Civ. P. 69(a)(1). Such proceedings must "accord with the procedure of the state where the court is located . . . ." Id. Where, as here, a judgment creditor seeks to enforce a judgment against a non-party transferee, the relevant state procedure is that found in CPLR §5225, which applies to property not in the possession of the judgment debtor. CPLR §5225(b) (hereinafter "Section 5225"). It has been held, and the court agrees, that while the CPLR provides for the commencement of a special proceeding to enforce a judgment against an allegedly liable non-party transferee, a motion made under Rule 69 is a permissive vehicle for a federal proceeding applying Section 5225. Mitchell v. Lyons Professional Services, Inc., 727 F. Supp.2d 120, 123-24 (E.D.N.Y. 2010).

II.   Successor Liability

   A.   Common Law v. Federal Common Law Approaches

The law of successor liability varies depending upon the context in which it is raised, and the Second Circuit has not yet decided the proper legal standard to be applied in an FLSA case. Battino v. Cornelia Fifth Ave., LLC, 861 F. Supp.2d 392, 402 (S.D.N.Y. 2012); Alvarez v. 40 Mulberry Restaurant, Inc., 2012 WL 4639154 *4 (S.D.N.Y. 2012). While some courts have applied traditional common law principles (which are the same as those followed under New York law), others have applied the less stringent "substantial continuity" test, typically used by federal courts in the labor law context. Compare Kaur v. Royal Arcadia Palace, Inc., 643 F. Supp.2d 276, 289 n.10 (E.D.N.Y. 2007) (applying common law test) with Battino, 861 F. Supp.2d 392 (applying substantial continuity test). Before determining which test to apply, the court outlines briefly the different standards.

Under the common law, a purchaser of the assets of a corporation is generally not liable

7

to the seller's creditors. The narrow exceptions to this rule are cases where:

(1) the successor expressly or impliedly assumes the predecessor's liability;

(2) there was a consolidation or merger of seller and purchaser;

(3) the purchasing corporation was a mere continuation of the selling corporation; or

(4) where the transaction is entered into fraudulently to escape such obligations.

New York v. National Service Industries, Inc., 460 F.3d 201, 209 (2d Cir. 2006). The second and third exceptions referred to above, i.e., the "de facto merger and "mere continuation" exceptions – have been recognized to be "so similar that they may be considered a single exception." Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 n. 3 (2d Cir. 2003) (citations omitted). Importantly, it has been held that where ownership actually changes hands, there can be no finding of either exception. See Battino, 861 F. Supp.2d at 401.

In contrast to the New York/common law of successor liability, is the more lenient "substantial continuity" test. That test is "an equitable, policy driven approach to successor liability that has very little connection to the concept of successor liability in corporate law." Cobb v. Contract Transport, Inc., 452 F.3d 543, 551 (6th Cir. 2006). While the Second Circuit recognizes that this test is applied by federal courts in labor law cases, it has also held that the test is not to be considered as a part of "general federal common law." New York v. National Services Industries, Inc., 352 F.3d 682, 687 (2d Cir. 2003).

The substantial continuity test was first announced by the Supreme Court in Golden State Bottling Co., Inc. v. N.L.R.B., 414 U.S. 168 (1973). There, the Court held that a purchaser of a business was required to comply with an NLRB order for reinstatement and back pay issued against the seller. Id. at 170. Reaching its decision, the Court weighed the importance of

8

protecting employees victimized by unfair labor practices against the "minimal cost" to the successor, as well as the purchaser's ability to protect against such liability with an indemnity clause. Id. at 185.

Case law has interpreted and extended the successor liability analysis of Golden State Bottling to various areas of labor law, including employment discrimination. See, e.g., E.E.O.C. v. Nichols Gas & Oil, Inc., 518 F. Supp.2d 505, 512 (W.D.N.Y. 2007) (Title VII) (opinion of Magistrate Judge), opinion of Magistrate Judge adopted by District Court, E.E.O.C. v. Nichols Gas & Oil, Inc., 688 F. Supp.2d 193, 200 (W.D.N.Y. 2010); Brzozowski v. Correctional Physician Services, Inc., 360 F.3d 173, 177 (3d Cir. 2004) (Title VII); Rojas v. TK Communications, Inc., 87 F.3d 745, 750 (5th Cir. 1996) (Title VII); Musikiwamba v. ESSI, Inc., 760 F.2d 740, 744 (7th Cir. 1985) (Section 1981); Equal Employment Opportunity Commission v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1090-91 (6th Cir. 1974) (Title VII); MTA Trading, Inc. v. Kirkland, 84 A.D.3d 811, 815, 922 N.Y.S.2d 488, 491 (2d Dep't. 2011) (New York State Human Rights Law).

Courts adopting the substantial continuity test characterize it as an equitable approach that balances: (1) the interests of the defendant-employer; (2) the interests of the plaintiff-employee, and (3) the goals of federal policy. Nichols Gas & Oil, 518 F. Supp.2d at 512 (W.D.N.Y. 2007); see also MacMillan, 503 F.2d at 1090-91. As a guide to equitable application of the three-pronged balance, many courts consider the following nine factors:

(1) whether the successor company had notice of the charge,

(2) the ability of the predecessor to provide relief,

(3) whether there has been a substantial continuity of business operations,

9

>   (4) whether the new employer uses the same plant,
>
>   (5) whether he uses the same or substantially the same work force,
>
>   (6) whether he uses the same or substantially the same supervisory personnel,
>
>   (7) whether the same jobs exist under substantially the same working conditions,
>
>   (8) whether he uses the same machinery, equipment and methods of production and
>
>   (9) whether he produces the same product.

Nichols Gas & Oil, 518 F. Supp.2d at 201; Battino, 861 F. Supp.2d at 404. The nine factors are not, in themselves, the test for successor liability. Rather, they play a role in assessing the equitable balance among the three factors relevant to the substantial continuity test, i.e., the interests of the plaintiff, those of defendant and public policy. Accord Brzozowski, 360 F.3d at 177-78 (noting that doctrine is derived from "equitable principles").

No one factor is determinative. Nichols Gas and Oil, 518 F. Supp2d at 512; 688 F. Supp.2d at 201. However, the first two factors have been characterized as "critical," with the remaining seven simply providing "a foundation for analyzing the larger question of whether there is a continuity in operations and the work force of the successor and predecessor employers." Rojas, 87 F.3d at 750, quoting, Musikiwamba, 760 F.2d at 750.

B.   Substantial Continuity in a FLSA Case

Courts outside of this circuit have decided that the substantial continuity test is to be applied in a FLSA case of successor liability. E.g., Steinbach v. Hubbard, 51 F.3d 843, 845-46 (9th Cir. 1995); Thompson v. Bruister and Associates, Inc., 2013 WL 1099796 *5-6 (M.D. Tenn. 2013) Chao v. Concrete Mgt. Resources, L.L.C., 2009 WL 564381 *3 (D. Kan. Mar. 5, 2009); Brock v. LaGrange Equip. Co., 1987 WL 39105 *1 (D. Neb. 1987). The Second Circuit,

10

however, while acknowledging application of the substantial continuity test in the labor law context, has yet to rule directly on whether the test should apply in an FLSA case of successor liability. The issue has been decided, however, by district courts within this circuit. Specifically, two courts within the Eastern District of New York have rejected the substantial continuity test, instead opting to apply the more stringent successor liability test of New York law. See Kaur v. Royal Arcadia Palace, Inc., 643 F. Supp.2d 276, 289 n.10 (E.D.N.Y. 2007); Vasquez v. Ranieri Cheese Corp., 2010 WL 1223606 * (E.D.N.Y. 2010). On the other hand, two courts in the Southern District of New York have held that, like successor liability claims arising in other areas of labor law, FLSA successor liability issues are properly governed by the substantial continuity test. See Battino, 861 F. Supp.2d 392; Wong v. Hunda Glass Corp., 2010 WL 2541698 *1 (S.D.N.Y. 2010).

The Eastern District cases that have rejected the substantial continuity test in favor of traditional common law principles are Kaur and Vasquez. While Vasquez does not discuss the issue in detail, Kaur examined the issue, albeit only in a footnote, and refused to apply the substantial continuity test to an FLSA case. This determination was based primarily on language employed by the Second Circuit when rejecting the test in New York v. National Services Industries, Inc., 352 F.3d 682 (2d Cir. 2003) ("NSI") – a case alleging successor liability for environmental cleanup costs assessed under CERCLA. Particularly instructive to the Kaur court was the Second Circuit's direction that when considering issues as "fundamental as the liability implications of corporate ownership," the common law is not to be abrogated unless the statute speaks "directly to the question addressed by the common law." NSI, 352 F.3d at 685, quoting, United States v. Bestfoods, 524 U.S. 51, 70 (1998) (internal citation omitted).

11

Southern District courts applying the substantial continuity test rely on the fact that FLSA cases are driven by the same policy concerns raised in other labor law cases, and have taken guidance from FLSA cases decided outside of this circuit. See Battino, 861 F. Supp.2d at 404, citing, Steinbach v. Hubbard, 51 F.3d 843, 845-46 (9th Cir. 1995); Chao v. Concrete Mgt. Resources, L.L.C., 2009 WL 564381 *3 (D. Kan. Mar. 5, 2009); Brock v. LaGrange Equip. Co., 1987 WL 39105 *1 (D. Neb. 1987); accord Thompson v. Bruister and Associates, Inc., 2013 WL 1099796 *5-6 (M.D. Tenn. 2013).

Additionally, like the court in Kaur, the Battino court found support for its position on FLSA successor liability in the Second Circuit's NSI decision. In contrast to the Kaur court's focus on the broad principle stated above, Battino noted that NSI did not change the "long-standing" application of the substantial continuity test in the labor law context. Battino, 861 F. Supp.2d at 402; see NSI I, 352 F.3d at 687 (noting that the substantial continuity test is "well established in labor law"). Additionally, Battino rejected the common law approach on the ground that NSI should be construed narrowly to apply only in the CERCLA context. Battino, 861 F. Supp.2d at 402.

III.  Disposition of the Motion

  A.  The Substantial Continuity Test Applies

Upon review, the court holds that in the absence of direct guidance from the Second Circuit, but in light of that court's reference to the widespread acceptance of the substantial continuity test in the labor law context, the better view is to apply that test in the context of FLSA claims of successor liability. This approach is in accord with cases routinely applying the doctrine in other areas of labor and employment law. See Battino, 861 F. Supp.2d at 403 (noting

application of substantial continuity test in Title VII, the Multiemployer Pension Plan Amendments Act, the Mine Safety and Health Act, the ADEA and ERISA); see also Einhorn v. M.L. Ruberton Const. Co., 632 F.3d 89, 99 (3d Cir. 2011) (ERISA); MTA Trading, Inc. v. Kirkland, 84 A.D.3d 811, 814-15, 922 N.Y.S.2d 488, 491-92 (2d Dep't. 2011) (New York State Human Rights Law).

The court's decision is also in accord with policies underlying the FLSA. Like the labor law policies referred to in Golden State Bottling, and other employment law cases, the FLSA exists to protect workers from unfair workplace practices and conditions. McMillan, 503 F.3d at 1091 (noting that imposition of successor liability in Title VII cases promotes the policy of "extending protection to and providing relief to the victims of prohibited employment practices"); see Golden State Bottling, 414 U.S. at 181. Imposing successor liability under equitable circumstances serves the policy of making workers whole and ensuring that they receive proper wages due. Similarly, equitable application of the test allows courts the leeway to ensure that those rights are properly weighed against the rights of a bona fide purchaser of an ongoing business. See Steinbach, 51 F.3d at 846 (noting necessity of weighing equitable considerations of remedying labor law violations against furthering the free transfer of capital and business reorganization). Additionally, application of the substantial continuity test in a FLSA case is in accord with the thinking of the majority of courts that have discussed the issue – both within and outside of this circuit. E.g., Steinbach, 51 F.3d at 845–46; Chao, 2009 WL 564381 at *3; Brock, 1987 WL 39105, at *1; Thompson, 2013 WL 1099796 *5-6 (M.D. Tenn. 2013).

Having decided that the substantial continuity test applies in cases of successor liability

13

under FLSA, the court turns to apply that test to the facts of the present case.

III.   Disposition of the Motion

   A.   Balance of Factors

The court turns first to the issue of notice of the Judgment to the Transferees. As to this issue, the court holds that there is no question but that the Transferees had notice of the Judgment. The sale of the Babi I salon was placed on hold pending the outcome of certain proceedings in this court, and it is clear that Transferees had knowledge of this court's review of the terms of the sale. It was not until the court lifted its order of attachment that the sale of the salon was consummated. Indeed, it was the notice of a potential liability that prompted the parties to negotiate an indemnity clause in the contract.

Turning to the second factor – the ability of the defendants to satisfy the judgment – the court holds that it is unclear as to whether Defendants are actually unable to pay, or are simply employing tactics to avoid payment. In any event, the failure of Defendants to pay any part of the Judgment, despite Plaintiffs' continual and relentless collection efforts, leads the court to conclude that this factor weighs in favor of the imposition of successor liability.

The remaining seven factors are related in that each is aimed at determining the overall question of substantial continuity of the predecessor's business. While it appears that Babi I continues to operate in the same line of business as its predecessor, and that the new salon has retained many of the same employees, Rosemary and Frank are no longer involved in the salon. Thus, while the business continues as a salon, there does not appear to be continuity of ownership or management thereof.

Upon consideration of the foregoing, the court holds that it is appropriate to impose

successor liability in this case. In so holding, the court makes clear that it relies heavily on the uncontroverted factor of notice, and the likely inability of Defendants to pay the Judgment. The factor of notice, in particular, takes into account the needs of the innocent purchaser of a business, and is critical to the equitable application of the substantial continuity test. The purchaser's notice, coupled with the ability (and in this case the reality) of negotiating an indemnity clause, make imposition of successor liability equitable. Accord McMillan, 503 F.3d at 1094 (referring to first two factors as "critical"); Musikiwamba, 760 F.2d at 750 (referring to successor's ability to protect himself with indemnity clause as important factor to consider when imposing liability).

In reaching its conclusion the court notes that it has not, in this case, weighed heavily the factors relating to the ongoing nature of Babi I as a nail salon. The court recognizes that it would be a rare asset sale involving the use of the seller's name in an ongoing concern, where the business would not continue in the same manner. Such continuity, standing alone, should not necessarily lead to imposition of successor liability. Where, as here, however, the factors of notice and ability to pay weigh heavily in favor of the imposition of liability, a finding of successor liability is appropriate.

B.  Extent of Liability/Personal Liability of Park

The court's determination that successor liability should be imposed does not end the inquiry. Instead, the court must consider the extent to which it is equitable to impose liability for the full amount of the Judgment, and whether such liability should be imposed on the corporate purchaser of the business, as well its individual principle. As noted, the Judgment includes damages for unpaid wages, as well as significant amounts attributable to liquidated damages

15

under federal and state wage and hour laws, and prejudgment interest.

The court holds that equity does not require a finding of successor liability as to the full amount of the Judgment. Instead, the court holds that it is equitable to impose liability only for the original amount of the Judgment as found by the jury (as set forth above), but not as to additional amounts awarded representing liquidated damages and prejudgment interest. The policy of making workers whole is furthered by imposition of liability for the amount of the Judgment reflecting unpaid wages. No such policy is favored by imposition of additional damages on the bona fide purchaser of a business. Cf. Nichols Gas & Oil, 688 F. Supp.2d at 204-05 (allowing claim for successor liability as to compensatory damages but refusing to impose such liability for punitive damages on innocent purchaser in Title VII case).

Finally, the court addresses the issue of whether it is appropriate to impose personal liability on Park for the Judgment. In support of the argument that Park should be individually liable, Plaintiffs state that her present duties militate in favor of a finding that she is an "employer," within the broad meaning of the FLSA. See Herman v. RSR Sec. Services Ltd., 172 F.3d 132 (2d Cir. 1999). The factors for making such a finding, as set forth in Herman, are whether the person alleged to be an FLSA employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman, 172 F.3d at 139 (citations omitted).

The Herman factors for determining whether an individual is an FLSA employer make sense when seeking to cast a broad net over individuals potentially liable under the statute. The definition makes less sense where, as here, an individual is alleged to be liable only as a principle

in a corporation that purchased the assets of the predecessor judgment-debtor. Here, Park never exercised any power over the Plaintiff-employees. Instead, liability arises from her status as a principle of a corporation that purchased the business where Plaintiffs were formerly employed. While Park might currently be an FLSA or state law "employer," of the salon's present employees, she was not the Plaintiffs' employer at the time of the violations that formed the basis of the trial. The actual purchaser of the Babi I salon was the corporate entity Inhae. Documents before the court, including copies of checks drawn on the Inhae account show it to be financially responsible for the present obligations of Babi I.

As the actual purchaser of Babi I, and for the reasons set forth above, Inhae is the successor liable under the FLSA. Park, who is a principle of that corporation was never the actual employer of Plaintiffs. It furthers neither the interests of the FLSA, nor principles of equity to make Park personally responsible for payment of the Judgment.

## CONCLUSION

For the foregoing reasons, the court holds that successor liability as to Inhae Corp. Only for the judgment in this action is to be imposed as set forth above. Plaintiffs are to submit an appropriate judgment on notice to this court within one week of the date of this order.

SO ORDERED.

s/ Leonard D. Wexler
_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
October 3, 2013

17